ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NOS. 19-CR-421-CRB & 23-MJ-70921 |
|---|---|---|
| Plaintiff, | ) ) | UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRETRIAL DETENTION |
| v. | ) ) ) | |
| DOMINIC BATISTE, | ) ) | Date: June 30, 2023 (Detention Hearing) Time: 10:30 a.m. |
| Defendant. | ) ) | Court: Honorable Sallie Kim |

    Defendant Dominic Batiste is a member of the San Francisco Mission District Norteños now charged with his third federal firearms offense. In April 2023, while on federal supervised release, he was involved in a car crash and shooting in the Outer Mission neighborhood of San Francisco. The entire incident is captured on surveillance footage and shows Batiste racing after a car and ramming into it at a high speed, all while armed with a stolen, loaded firearm that had been used in two other shootings over the past 9 months.

    Because Batiste was himself shot in the incident, the government gave him two months to recover so that no further medical procedures would be needed. Now that that has occurred, the overriding concern is the significant danger that Batiste poses to the public as an active gang member who repeatedly arms himself and engages in violence. Because he cannot bear his burden under Federal

GOVERNMENT DETENTION MEMORANDUM    1
19-CR-421-CRB & 23-MJ-70921

Rules of Criminal Procedure Rule 32.1(a)(6) of proving by clear and convincing evidence that he will not flee or pose a danger to the public, he should be detained pending adjudication of his Form 12 and trial on his new substantive charge.

## BACKGROUND

### I. OFFENSE CONDUCT

A. <u>Batiste Is Involved in a Car Accident and Shooting in San Francisco</u>

Around 2:00 p.m. on April 26, 2023, San Francisco Police Department officers responded to the scene of a shooting on the 100 block of Sadowa Street in the Outer Mission neighborhood of San Francisco. This is a residential neighborhood, near to the Minnie & Lovie Ward Recreation Center, Sheridan Elementary School, and Daly City BART station. Officers found Batiste suffering from gunshot wounds and lying next to the open driver's side door of a grey BMW, which was parked in the middle of the street. The BMW was registered to Batiste. Another vehicle, a grey Infiniti, was facing eastbound on Sadowa Street. There was damage to both vehicles.

SFPD officers asked Batiste who shot him, and Batiste claimed he did not know. SFPD officers determined there were no persons inside the Infiniti and it was locked. Batiste was transported to San Francisco General Hospital with gunshot wounds to his leg and torso.

Given that Batiste's car was disabled and blocking the street, SFPD officers conducted an inventory search of the car in preparation for towing it. During the inventory search, officers observed a .45 caliber Smith & Wesson military police semi-automatic firearm, serial number DVY8288, on the driver's floorboard. Upon inspection, the gun was loaded with 10 unfired cartridges. Officers also found a black gun holster in the trunk of Batiste's vehicle.





### B. The Gun Was Stolen, Used in Two Other Shootings, and Bore Batiste's DNA

A records check on the .45 Smith & Wesson firearm, serial number DVY8288, indicated the firearm was stolen on September 2, 2022, from a locked vehicle belonging to an off-duty US Mint Federal Police Officer. Cartridges were test-fired from the gun and entered into the National Integrated Ballistic Information Network (NIBIN). NIBIN provided associations between Batiste's gun and shell casings recovered at the scenes of a 2022 shooting in Stockton and a 2023 shooting in Manteca, both of which occurred after the gun was stolen from the Mint officer.

The firearm was swabbed for DNA, and a major profile was identified from the grip of the gun. The SFPD Forensic Laboratory's DNA analysis found "very strong support" (1 in 3.47 septillion) for that DNA profile belonging to Batiste. The presence of Batiste's blood on the grip of the gun suggests that he attempted to retrieve the gun during the shooting.

### C. Surveillance Footage Captures the Whole Incident

Officers also recovered surveillance footage from a home on Sadowa Street that captured the entire incident.[1] The video shows a grey Infiniti driving westbound on Sadowa Street, pulling into a driveway, backing out of that driveway, and then stopping in the middle of street. At that point, a black male wearing a grey hoodie can be seen exiting the front passenger side of the Infiniti, while Batiste's BMW is observed turning from Plymouth Avenue westbound onto Sadowa Street and accelerating at a high rate of speed before crashing into the Infiniti. The black male wearing the grey hoodie is seen on foot shooting at the BMW at least once. Batiste is then observed exiting the BMW and squatting next to the driver's side of the vehicle with the door open. No additional passengers are seen in the vehicle with Batiste. The black male with the grey hoodie then walks around the car, sees that Batiste is outside of his car, and runs up to shoot Batiste again. The shooter and another black male, who exited their vehicle via the rear passenger side door, are then seen running away towards Plymouth Avenue.

---

[1] The surveillance footage, along with all evidence in the case, was produced to the defense following Batiste's initial appearance on June 26, 2023. The footage will also be manually lodged with the Court.

GOVERNMENT DETENTION MEMORANDUM   3
19-CR-421-CRB & 23-MJ-70921

## II. CRIMINAL HISTORY & CHARACTERISTICS

Prior to the April 26, 2023 incident, Batiste had been convicted of four felonies and one misdemeanor, all of which involved violence and/or weapons. In 2015, he was convicted in state court of robbery and assault with a deadly weapon and served approximately 15 months in jail. That incident occurred in the middle of the night at the corner of 23rd and Mission Streets in San Francisco. The victim said he was walking down the street when Batiste and the two other individuals knocked him to the ground and punched and kicked him in the face several times. They then robbed the victim of his belongings and ran from the scene yelling gang phrases. The victim suffered facial bruising and cuts. In 2015, Batiste was also convicted of misdemeanor brandishing after he pulled out a "long kitchen knife" during an altercation and waved it towards his victims. He then took a gold necklace off of one of the victim's necks. When someone tried to reclaim the necklace from Batiste, the defendant waved his knife and cut the victim's finger. Prior to leaving the scene, Batiste and another male threatened the victims and said they "know people that would come back and kill them."

In 2016, Batiste was convicted in federal court of being a felon in possession of a firearm and was sentenced to 28 months of prison, with three years of supervised release. In 2020, following an arrested while he was on supervised release, he was again convicted of felon in possession of a firearm and sentenced to 37 months of prison. In November 2022, Batiste's supervision for that conviction was revoked and reinstated following his admission to several violations of his supervised release conditions. He was on supervised release again at the time of the instant offense. Batiste has further been arrested for battery with great bodily injury, criminal threats, carjacking, burglary, robbery, active participation in a criminal street gang, and contempt of court.

## ARGUMENT

### I. LEGAL STANDARDS

Because U.S. Probation has filed a Form 12 petition alleging that Batiste violated his conditions of supervised release, and the government has also filed a criminal complaint charging Batiste with a substantive violation of federal law, there are two different legal standards applicable to the issue of detention. The government submits that Batiste should be detained under either standard.

Under Federal Rules of Criminal Procedure Rule 32.1(a)(6), a magistrate judge must detain a defendant charged with violating the conditions of his or her supervised release unless the defendant establishes "by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community." The burden of proof rests with the defendant. *Id.*

For a defendant charged with a substantive federal crime, the Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

"[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). The four factors to be considered under § 3142(g) are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. BATISTE PRESENTS AN OVERWHELMING DANGER TO THE COMMUNITY

Consideration of the § 3142(g) factors demonstrates that detention is appropriate in this case based on Batiste's danger to the community.

First, the offense conduct is very serious. Despite being on federal supervised release, Batiste drove at high speeds chasing another car through a residential neighborhood in broad daylight with pedestrians around. He accelerated and rammed into the vehicle he was chasing, all while armed with a

loaded firearm that had been stolen from a federal officer and then used in two other shootings. Batiste's conduct precipitated a shooting on a residential street near people, homes, and cars—a shootout that Batiste was clearly prepared to engage in himself, given his handprint and DNA on the grip of his loaded gun. This conduct, even considered in isolation, shows that Batiste is an unmitigable danger to the public. *See* § 3142(g)(1).

But we do not consider a defendant's danger in isolation. Rather, a look at Batiste's extensive and violent criminal history only amplifies the danger he poses to the community. He is a Norteño gang member and four time-convicted felon, with convictions for assault with a deadly weapon, robbery, and two federal firearms offenses. This criminal history shows that Batiste is not merely someone who arms himself; he is willing to use those weapons to injure people. Moreover, Batiste was on state probation when he picked up his first federal case. He was on federal supervised release when he picked up his second federal gun case. And he was on supervised release when the instant offense occurred. The fact that Batiste was on supervision at the time of his last three offenses shows that there is no reasonable likelihood he will abide by his conditions of release, nor that such conditions could mitigate the danger he poses to the public. The only way to adequately mitigate the significant danger that Batiste poses to the public is to detain him.

Finally, the evidence against Batiste is overwhelming. He is a four-time convicted felon with two prior convictions for unlawful firearm possession. His DNA was found on the grip of the gun, and the gun was located next to the gas pedal of the car he was driving. Video evidence shows that he was the only person in the car. The fact that Batiste was on supervised release with a search condition, the gun was observed in plain view through the open driver's door, and his car was disabled and blocking the street thereby justifying towing and an inventory search, precludes any real defense in this case. The strength of the evidence, considered along with the other § 3142 factors, shows that there are no conditions that can adequately mitigate Batiste's threat to the public.

Now, Batiste will surely point to his medical condition as the reason he should remain out of custody. The government is mindful of that; in fact, the government and Probation provided Batiste with a two-month grace period before initiating the instant proceedings. However, despite requests by Probation beginning on June 13, 2023 for documentation of Batiste's medical condition and any

upcoming medical procedures, none has been provided as of the present filing, other than a statement from the defense that Batiste does not need any further surgeries. While Batiste may need to participate in physical therapy, he has not explained why that treatment and any accompanying exercises cannot be performed in custody. Nor does Batiste have any current medical condition that would prevent the U.S. Marshals Service or Alameda County Sheriffs officials from providing the needed care at Santa Rita Jail.

At this point, the overriding concern should be the significant danger that Batiste poses to the public. He has shown repeatedly that he will re-arm himself as soon as he has the chance (if he has not already). And once he is able to drive again (if he cannot already), he will be a danger to those on the roadway. Given his long record of non-compliance with conditions set by courts, there is no reason to believe that he will abide by any conditions this Court sets.

## CONCLUSION

Given the lack of conditions that can reasonably assure the safety of the community, the government respectfully requests that Batiste be detained pending trial.

DATED: June 27, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Leif Dautch*
LEIF DAUTCH
Assistant United States Attorney